24

IN RE MARSHALL.

(Nos. V87-64731 and V87-64740—
Decided January 10, 1989.)

Court of Claims of Ohio,
Victims of Crime Division.

*Marilyn Tobocman,* for the applicants.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Julie Ann Pope,* for the state of Ohio.

FRED J. SHOEMAKER, J. On April 17, 1986, Corlette Marshall, the victim, female, age twenty-nine years, five feet four inches and weighing one hundred thirty-four pounds, was standing outside an automobile leaning in talking to people inside the automobile. James Mayes, male, age thirty-six years, six feet four inches in height, and weighing over two hundred pounds, approached Corlette from the rear, grabbed her by the back of the neck and threw her on the hood of the car and stated, "I told you to leave me alone." Corlette responded by taking a knife from her purse and walking toward Mayes. When she was about seven to eight feet from him, Mayes shot and killed her with a concealed gun he was carrying. Mayes was the aggressor. The autopsy revealed the bullet went through the joint between the collar bone and the breast bone and the first rib on the left side finally *passing downward* penetrating the right lung. Corlette's body had the following drugs present:

"Ethyl alcohol - grain alcohol - (ingested); Meperidine - Demerol, narcotic analgesic with multiple actions qualitatively similar to those of morphine. Taken by mouth or injection.

"Tripelennamine - antihistamine which enhances effect of narcotics when used in combination."

Corlette had no prior criminal history. Previously that day, she had an argument with Mayes.

In the consolidated finding of fact and recommendation of the Attorney General it was the recommendation of the Attorney General that both claims be denied because Corlette had engaged, within the ten years prior to the criminally injurious conduct that gave rise to the claim, in conduct that would constitute a felony. The Attorney General also found that Corlette had violated R.C. 2743.60(F) in that she was guilty of "contributory misconduct" which has a causal relationship to the criminally injurious conduct that is the basis of this claim.

As a result of the shooting, James Mayes was charged with voluntary manslaughter (R.C. 2903.03) with gun specifications; having a weapon while under disability (R.C. 2923.13) with gun specifications; and with violence specifications. He pleaded not guilty, claiming he acted in self-defense. He was convicted of all charges and sentenced to prison.

After shooting Corlette, Mayes fled from the scene of the crime. Thereafter, Mayes had an outstanding warrant dated May 1, 1986 on the charge of aggravated murder, and had an outstanding warrant dated May 7, 1986 for the felonious assault of Joyce Barron. He also had an outstanding warrant for domestic violence, unauthorized use of property, contempt of

court, and aggravated menacing. Furthermore, he had only recently been released from prison.

On September 24, 1987, the single commissioner issued his opinion finding that there was a failure of proof by a preponderance of the evidence that the victim violated R.C. 2743.60(E). The Attorney General filed a motion to reconsider this ruling. That motion was overruled by the single commissioner.

However, the single commissioner found that the victim violated R.C. 2743.60(F) because she had engaged in "contributory misconduct" as defined in R.C. 2743.51(M). The applicants filed objections to the single commissioner's judgment.

The three-member panel of commissioners held:

"IT IS ORDERED THAT:

"(1) The September 24, 1987, order of the single commissioner * * * is approved, and affirmed;

"(2) This claim is DENIED and judgment entered for the state of Ohio;

"(3) Costs be assumed by the reparations fund."

The applicants timely objected and appealed from the decision of the three-member panel affirming the decision of the single commissioner for the following reasons.

"1. The panel of commissioners erred in affirming the decision of the single commissioner that the decedent engaged in contributory misconduct.

"2. The panel of commissioners erred in affirming the decision of the single commissioner that the appellant William Marshall, nine years old, had failed to prove by the preponderance of the evidence that as decedent's dependent, he ha[d] sustained economic loss and replacement services loss."

Counsel for both parties agree, and the record supports, that the panel of commissioners never considered the economic loss and replacement services loss claimed by applicant William Marshall. The parties have reserved ruling on that issue until the contributory misconduct issue is decided by this court.

R.C. 2743.61(A) states in part as follows:

"* * * If the determination of the commissioners with respect to any claim for an award of reparations is appealed, the court of claims shall hear and determine the appeal on the basis of the record of the hearing before the commissioners, including the original award or denial made by a single commissioner, the finding of fact and recommendation of the attorney general, any information or documents that the attorney general used in his investigation, any information or data provided to the court of claims pursuant to division (B) of section 2743.53 of the Revised Code, and any briefs or oral arguments that may be requested by the court. If upon hearing and consideration of the record and evidence, the court decides that the decision of the commissioners appealed from is reasonable and lawful, it shall affirm the same, but if the court decides that the decision of the commissioners is unreasonable or unlawful, the court shall reverse and vacate the decision or modify it and enter judgment thereon."

The court finds that the decision of the panel of commissioners affirming the decision of the single commissioner that decedent engaged in "contributory misconduct," as defined in R.C. 2743.51(M), is unreasonable and unlawful and is hereby reversed. This case is remanded to the panel of commissioners.

R.C. 2743.60(F) provides in pertinent part:

"In determining whether to make an award of reparations pursuant to this section, a single commissioner or panel of commissioners shall consider

whether there was contributory misconduct by the victim or the claimant. A single commissioner or a panel of commissioners shall deny a claim for an award of reparations if it is determined that there was contributory misconduct by the claimant or the victim.''

R.C. 2743.51(M) states:

'' 'Contributory misconduct' means any conduct of the claimant or of the victim through whom the claimant claims an award of reparations that is *unlawful or intentionally tortious* and that, without regard to the conduct's proximity in time or space to the criminally injurious conduct, *has a causal relationship* to the criminally injurious conduct that is the basis of the claim.'' (Emphasis added.)

The single commissioner and the panel of commissioners agreed with the Attorney General's conclusion that the victim's action of pulling a knife and stepping toward her attacker (Mayes) was either unlawful or intentionally tortious conduct. Considering all the facts, and the application of the right of any human being to defend herself from an unprovoked assault, the court finds such a conclusion to be unreasonable and unlawful.

The undisputed facts are that the victim was attacked by a person with a long criminal record and with a propensity for violence. Mayes was a male, one foot taller and at least sixty-six pounds heavier than the victim, while the victim was a female, innocently talking to people in an automobile.

The victim had a right to defend herself, unless she acted unreasonably and attempted to unlawfully assault Mayes.

4 Ohio Jury Instructions (1987), Section 411.33(2) states:

"TEST. In determining whether [Corlette Marshall] had reasonable grounds for an honest belief that [s]he was in imminent danger, *you must put yourselves in the position of [Corlette Marshall],* with [her] characteristics, [her] knowledge or lack of knowledge, and under the circumstances and conditions that surrounded [her] at that time. You must consider the conduct of [*James Mayes*] and determine if his acts and words caused [*Corlette*] to reasonably and honestly believe that [s]he was about to be killed or *to receive great bodily harm.''* (Emphasis added.)

Also, Section 411.35(2) of 4 Ohio Jury Instructions makes it clear that a person who seeks trouble and provokes a fight and does not attempt to avoid it or leave the scene of the trouble is not acting in self-defense. Clearly, Mayes was the aggressor, and he never attempted to flee from the scene prior to shooting Corlette. He had every opportunity to withdraw when Corlette defended herself. He was bigger and stronger, and there was nothing to stop Mayes from withdrawing from the scene.

It is unreasonable for this victim of crime to be found guilty by a panel of commissioners of ''contributory misconduct,'' as defined by applicable law, *supra.* The totality of the circumstances does not justify such a conclusion. Sometimes it may be wise for victims not to attempt to defend themselves against criminals; however, they have a legal right to do so.

R.C. 2743.60(F) and 2743.51(M) require a finding that the conduct of Corlette was neither ''unlawful'' nor ''intentionally tortious.'' The totality of the evidence and applicable law make such a finding ''unreasonable'' in this case.

The decision of the commissioner is reversed and the cause is remanded to the panel.

*Decision reversed and cause remanded.*